IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NATIONAL CREDIT UNION )
ADMINISTRATION BOARD, )
 )
      Plaintiff, )
 )
  v. ) Case No. 12-2781-JWL
 )
BEAR, STEARNS & CO.,INC., )
n/k/a J.P. MORGAN SECURITIES, LLC; )
STRUCTURED ASSET MORTGAGE )
INVESTMENTS II, INC.; and )
BEAR STEARNS ASSET BACKED )
SECURITIES I, LLC, )
 )
      Defendants. )
 )
_____)

# MEMORANDUM AND ORDER

This matter is presently before the Court on defendants' motion to dismiss (Doc. # 19). The Court concludes that certain of plaintiff's claims are time-barred. Accordingly, the motion is **granted in part and denied in part**, as set forth more specifically herein.

## I. Background

Plaintiff National Credit Union Administration Board brings this suit as conservator and liquidating agent of the following four credit unions: U.S. Central Federal Credit Union ("U.S. Central"), Western Corporate Federal Credit Union

("WesCorp"), Members United Corporate Federal Credit Union ("Members United"), and Southwest Corporate Federal Credit Union ("Southwest"). The suit relates to 83 different residential mortgage-backed securities ("RMBS" or "certificates"), each purchased by one of the credit unions between October 2005 and June 2007. By the present suit, filed on December 14, 2012, plaintiff brings claims under the federal Securities Act of 1933 and under California, Kansas, Texas, and Illinois statutes, based on alleged untrue statements or omissions of material facts relating to each RMBS. Defendant Bear, Stearns & Co. was the underwriter or seller for the certificates, while the other two defendants issued the certificates.[1] Defendants have moved to dismiss all claims.

Plaintiff has brought eight other similar suits, involving different certificates, in this district, which cases have been re-assigned to the undersigned judge. In one of those actions, Case No. 12-2648, by Memorandum and Order dated April 8, 2013, the Court granted in part and denied in part the motion to dismiss filed by the Credit Suisse defendants ("Credit Suisse"). *See National Credit Union Admin. Bd. v. Credit Suisse Sec. (USA) LLC*, __ F. Supp. 2d __, 2013 WL 1411769 (D. Kan. Apr. 8, 2013) ("*Credit Suisse*"). In that opinion, the Court held as follows: (1) Credit Suisse did not show that the Court lacked venue over plaintiff's claims asserted on behalf of credit unions WesCorp and Southwest; (2) plaintiff's claims were not untimely as a matter of law with

---

[1]Another alleged issuer, IndyMac MBS, Inc., was originally named as a defendant, but plaintiff has dismissed its claims against that entity.

2

respect to the applicable one- and two-year discovery limitations periods; (3) the so-called Extender Statute, 12 U.S.C. § 1787(b)(14), which provides the limitations period for claims brought by plaintiff as conservator or liquidator, applies to federal and statutory claims; (4) the Extender Statute displaces both limitations periods in the otherwise-applicable federal (Section 13, 15 U.S.C. § 77m) and state statutes; (5) plaintiff's three-year limitations period under the Extender Statute was triggered by plaintiff's appointment as conservator for a credit union, not by its later appointment as liquidator; (6) the Extender Statute's three-year limitations period may not be extended by a tolling agreement; (7) plaintiff's assertion of *American Pipe* tolling with respect to its federal claims based on some certificates did not fail as a matter of law at this stage; and (8) plaintiff's substantive allegations were sufficient to state plausible and cognizable claims against Credit Suisse. In some of its rulings, the Court followed the reasoning of Judge Rogers in ruling on a motion to dismiss in *RBS*, another of these nine similar cases (before the case was reassigned). *See id.* (citing *National Credit Union Admin. Bd. v. RBS Sec., Inc.*, 900 F. Supp. 2d 1222 (D. Kan. 2012) ("*RBS*")). Last week, in an interlocutory appeal in *RBS*, the Tenth Circuit affirmed Judge Rogers with respect to two of the issues listed above, holding that the Extender Statute does apply to federal and statutory claims and does displace Section 13's three-year limitations period. *See National Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, __ F.3d __, 2013 WL 4516997 (10th Cir. Aug. 27, 2013).

After issuing its opinion in *Credit Suisse*, the Court invited the parties in seven

3

of the other similar cases (one case had not yet been filed) to submit briefs addressing (a) the application of the Court's rulings in *Credit Suisse* to the motions to dismiss filed by the defendants in those cases and (b) the specific issue of the enforceability of plaintiff's tolling agreements.

**II.     Analysis**

   *A.     Initial Application of* Credit Suisse

As an initial matter, the Court notes that defendants, in their supplemental briefing in support of their motion to dismiss, have not renewed their arguments relating to the sufficiency of plaintiff's substantive allegations, the application of the discovery limitations periods, the displacement of Section 13's limitations periods by the Extender Statute, and the application of the Extender Statute to statutory claims. Thus, defendants have not distinguished the Court's *Credit Suisse* rulings concerning those issues, and the Court resolves the issues in plaintiff's favor in this case as well, for the reasons stated in *Credit Suisse* and as held by the Tenth Circuit in the appeal in *RBS*.

Nevertheless, defendants seek dismissal of some of plaintiff's claims on behalf of U.S. Central and WesCorp as time-barred pursuant to the three-year limitations period imposed by the Extender Statute. Absent some form of tolling, plaintiff was required to file those claims by March 20, 2012, three years after its appointment as conservator for those credit unions. Plaintiff did not initiate this action, however, until December 14, 2012. Nor may plaintiff rely on the Extender Statute's alternative reference to the

4

applicable state-law limitations periods, as this case was filed more than five years (the applicable repose period for all four states) after the purchases of these certificates.

Plaintiff has asserted tolling pursuant to an agreement executed by the parties, but the Court has, by an opinion issued in the *Credit Suisse* case on July 10, 2013, reaffirmed its ruling that plaintiff may not rely on such an agreement to avoid application of the Extender Statute's limitations period, and that ruling will also be applied in the present case. Thus, with respect to certificates for which plaintiff has not asserted some other form of tolling, plaintiff's federal and state claims on behalf of U.S. Central and WesCorp would be time-barred and subject to dismissal. Based on plaintiff's complaint and the parties' supplemental submissions, such claims include those based on the following certificates:

| Purchaser | Issuing Entity | CUSIP |
| --- | --- | --- |
| U.S. Central | AHM 2007-2 | 02660CAC4 |
| U.S. Central | AHM 2007-2 | 02660CAD2 |
| U.S. Central | AHM 2007-2 | 02660CAE0 |
| U.S. Central | BSABS 2006-HE4 | 07388AAB0 |
| U.S. Central | BSABS 2006-HE4 | 07388AAC8 |
| U.S. Central | BSABS 2007-SD3 | 07387LAA9 |
| U.S. Central | BSSLT 2007-1 | 07401WAA7 |
| U.S. Central | BSSLT 2007-1 | 07401WAP4 |
| U.S. Central | BSSLT 2007-1 | 07401WBA6 |
| U.S. Central | GMACM 2006-HE4 | 38012UAC3 |
| U.S. Central | IMSA 2007-2 | 452570AD6 |
| U.S. Central | IMSA 2007-3 | 45257VAD8 |
| U.S. Central | INDS 2006-3 | 43709RAA2 |
| U.S. Central | INDS 2007-1 | 43708DAA4 |
| U.S. Central | NAA 2007-1 | 65538NAE3 |
| U.S. Central | NHELI 2007-1 | 65537KAY6 |
| U.S. Central | SACO 2006-4 | 785778RD5 |

| | | |
|---|---|---|
| WesCorp | AHMA 2007-3 | 026935AD8 |
| WesCorp | BALTA 2006-2 | 07386HF89 |
| WesCorp | BALTA 2006-2 | 07386HF48 |
| WesCorp | BSMF 2007-AR4 | 07401YAQ8 |
| WesCorp | BSMF 2007-AR5 | 07400NAC4 |
| WesCorp | BSMF 2007-AR5 | 07400NAE0 |
| WesCorp | BSMF 2007-AR5 | 07400NAT7 |
| WesCorp | BSMF 2007-AR5 | 07400NAU4 |
| WesCorp | IMSA 2006-4 | 45257BAE0 |
| WesCorp | IMSA 2006-4 | 45257BAA8 |
| WesCorp | IMSA 2006-5 | 45257EAD6 |
| WesCorp | IMSA 2007-1 | 452559AD9 |
| WesCorp | IMSA 2007-2 | 452570AD6 |
| WesCorp | LUM 2006-7 | 55028BAB3 |
| WesCorp | NHELI 2007-1 | 65537KAB6 |
| WesCorp | NHELI 2007-1 | 65537KAC4 |
| WesCorp | PCHLT 2005-4 | 71085PDG5 |
| WesCorp | PCHLT 2005-4 | 71085PDH3 |
| WesCorp | SAMI 2006-AR3 | 86360KAC2 |
| WesCorp | SAMI 2007-AR3 | 86363NAZ2 |

Plaintiff has not disputed that, assuming the Court reaffirms and applies its prior rulings, those claims would be subject to dismissal. Accordingly, defendants' motion is granted with respect to those claims based on the listed certificates, which claims are hereby dismissed.

### B. *Claims for Which* American Pipe *Tolling Has Been Asserted*

Defendants also make several arguments for dismissal of claims on behalf of U.S. Central and WesCorp for which plaintiff has asserted *American Pipe* tolling.

### 1. PRE-2005 SHELF REGISTRATION STATEMENT

Defendants argue that plaintiff's federal Section 11 claim based on one certificate (BSMF 2006-AR1) was already stale in August 2008 when the class action on which

6

plaintiff relies for *American Pipe* tolling was initiated. Defendants assert, and plaintiff does not dispute, that this particular offering was by a prospectus supplement pursuant to a June 2003 shelf registration statement. Defendants note that that shelf registration statement was filed before the December 2005 SEC rule change that provided that, for purposes of Section 11 liability, a prospectus filing resets the effective date for the registration statement. *See* 17 C.F.R. § 230.430B(f)(2) ("Rule 430B"). Defendants argue that because this registration statement preceded the change, the three-year limitations period under Section 13 for a Section 11 claim based on the prospectus supplement began to run in June 2003, when the shelf registration statement was filed, and thus expired in 2006, prior to any *American Pipe* tolling. *See Maine State Retirement Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1165 n.8 (C.D. Cal. 2010) ("For MBS Offerings pursuant to shelf registration statements filed before December 1, 2005, the relevant "offering" date is the effective date of the registration statement.") (citing *Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992)).

In response, plaintiff cites *FHFA v. UBS Americas, Inc.*, 2012 WL 2400263 (S.D.N.Y. June 26, 2012). In *FHFA*, the court noted that Rule 430B clarified that an issuer may satisfy its post-registration statement disclosure obligations not only by means of a post-effective amendment, but also by prospectus supplement. *See id.* at \*3-4. The court concluded that the new rule, by providing for a reset effective date for prospectus supplements, sought to reconcile the Section 11 consequences of disclosure by prospectus supplement with those of disclosure by post-effective amendment. *See id.*

at *4. The court further reasoned as follows:

> Both parties question whether the Rule's broadened interpretation of what constitutes an initial *bona fide* offering [for purposes of Section 13's limitations period as applied to a Section 11 claim] is applicable to securities issued pursuant to registration statements that, like these, were filed before December 1, 2005. Ultimately, it is not necessary to resolve this issue. A filing that represents "a fundamental change in the information set forth in the registration statement" has always been deemed to restart the clock on Section 11 claims, 17 C.F.R. § 229.512(a)(1)(ii) ["Item 512"], and the fact that such a change may now be made through a prospectus supplement as opposed to a posteffective amendment does not alter that rule. The SEC release that accompanied Rule 430B makes this clear, emphasizing that for non-issuers such as "directors, signing officers, and experts," the new Rule did not intend "the filing of a form of prospectus . . . [to] result in a later Section 11 liability date" than that which previously applied, while emphasizing that for such parties, "the filing of a form of prospectus . . . reflecting fundamental changes in the information in the registration statement" would continue to trigger a new offering date. *See* SEC Rel. 33-8591, 2005 WL 1692642, *86; *accord In re Countrywide Fin. Corp. Sec. Litig.*, No. CV-07-052950-MRP, 2009 WL 943271, at *6 (C.D. Cal. 2009) (noting that, under pre-Rule 430B law, a new offering date was triggered by a filing that represented a "fundamental change" in the registration statement).

*See id.* Thus, the court concluded that because the prospectus supplement in that case represented a "fundamental change" in the registration statement information pursuant to Item 512, the Section 11 limitations triggering date would be reset to the date of the supplement, even though the shelf registration statement was filed before the new Rule 430B was promulgated in December 2005.

The Court is persuaded by the reasoning of the court in *FHFA*. Defendants attempt to distinguish that case as one involving a post-effective amendment instead of a prospectus supplement, which the *FHFA* court noted were distinct methods of

8

providing disclosures. In fact, however, the court in *FHFA* explicitly stated that the defendants there had used prospectus supplements, perhaps in an effort to take advantage of the new Rule 430B. *See id.* at *4. Moreover, the *Maine State* case on which defendants rely did not address the potential applicability of Item 512's "fundamental change" provision, and that court cited only to a pre-2005 case involving a post-effective amendment, *see Finkel*, 962 F.2d 169, which suggests that the *Maine State* court did not distinguish between prospectus supplements and post-effective amendments—which would make Item 512 applicable in either case.

In addition, as plaintiff notes, if Item 512's "fundamental change" provision could not apply to a prospectus supplement filed pursuant to a pre-2005 registration statement, then a Section 11 claim based on misrepresentations in a supplement might become time-barred prior to the issuance of the supplement. Such an absurd result supports an interpretation consistent with the SEC's understanding and the *FHFA* court's holding that the trigger date for such a claim would be reset under Item 512 if the supplement contained a fundamental change to the registration statement, even under pre-Rule 430B law.

The parties in this case have not addressed whether the new Rule 430B (allowing for a reset trigger date) could be applied retroactively to previously-filed registration statements—the question the court declined to address in *FHFA*—nor have they addressed whether Item 512's "fundamental change" standard for a reset trigger date has been met here. Accordingly, the Court cannot conclude at this time that this particular

9

Section 11 claim by plaintiff was necessarily time-barred prior to the start of the *American Pipe* tolling asserted by plaintiff.

## 2. APPLICATION TO THE EXTENDER STATUTE

Defendants argue that the Extender Statute's limitations period should not be subject to *American Pipe* tolling.[2] Defendants have not cited any authority supporting that position; instead, defendants seem to suggest that because the text of the Extender Statute does not explicitly provide for *American Pipe* tolling, such tolling should suffer the same fate as tolling by agreement, which the Court has held does not affect the Extender Statute's limitations periods. The Court rejects this argument. The Supreme Court authority on which this Court relied for its prior ruling involved only tolling by agreement. *See Credit Suisse*, 2013 WL 1411769, at *9 (citing *Mid State Horticultural Co. v. Pennsylvania R.R. Co.*, 320 U.S. 356 (1943)). Moreover, the Court relied on the Extender Statute's express provision that its limitations periods would apply "[n]otwithstanding any provision of any contract," *see id.* at *10—language that implicates tolling by agreement but would not have any relevance to *American Pipe* tolling. The fact that the Extender Statute does not explicitly address *American Pipe* tolling just makes it like any other statute of limitations to which such tolling may apply.

The Court also disagrees with defendant's position that the purpose of *American*

---

[2]Plaintiff notes that defendants did not raise this issue in their initial briefing on the motion to dismiss. Nevertheless, because both sides have now had an opportunity to brief the issue, the Court will address it here.

*Pipe* tolling is not furthered in the case of this plaintiff's actions on behalf of credit unions under the Extender Statute. *American Pipe* tolling is intended to avoid the unnecessary multiplicity of individual lawsuits, and the fact that plaintiff is a governmental entity does not alter the fact that it otherwise would be forced to protect by individual lawsuits its claims that may be included within class actions.

Finally, Tenth Circuit authority strongly indicates that *American Pipe* tolling may apply in the context of the Extender Statute. In *Joseph v. Wiles*, 223 F.3d 1155 (10th Cir. 2000), the Tenth Circuit concluded that *American Pipe* tolling does not compromise the purposes of statutes of limitation and statutes of repose, and it held that Section 13's three-year period of repose is subject to *American Pipe* tolling. *See id.* at 1167-68. This Court has previously ruled that the Extender Statute's three-year limitations period acts in a similar fashion to Section 13's three-year repose period. Defendants attempt to distinguish the Extender Statute from Section 13 by arguing that the latter is a statute of general applicability; that distinction, however, even if accepted, does not provide a basis for reading such a limitation into the Extender Statute. In the absence of authority supporting defendants' position, the Court sees no reason to distinguish Section 13 and the Extender Statute for this purpose, and therefore *Joseph* dictates that plaintiff be permitted to rely on *American Pipe* tolling (as otherwise appropriate) in satisfying the Extender Statute's three-year limitations period.

### 3. STANDING

In *Credit Suisse*, the Court rejected the defendants' arguments "that a party may

11

only take advantage of *American Pipe* tolling with respect to a claim based on a particular certificate if a named plaintiff in the class action had standing to assert such claim in that case," and "that such a plaintiff would have standing only if it purchased that certificate." *See Credit Suisse*, 2013 WL 1411769, at *11. In following the majority approach "under which the class action plaintiff's standing is not necessarily required for *American Pipe* tolling," the Court noted that abuse by the use of placeholder class action lawsuits could be avoided by a court's disallowing tolling when "the representative so clearly lacks standing that no reasonable class member would have relied on the filing of the class action." *See id.* (quoting *Genesee County Employees' Retirement Sys. v. Thornburg Mtge. Sec. Trust 2006-3*, 825 F. Supp. 2d 1082, 1162 (D.N.M. 2011)).

Based on that possible exception noted by the Court in *Credit Suisse*, defendants argue that *American Pipe* tolling should not be applied with respect to plaintiff's claims based on 20 particular certificates because in those corresponding class actions the plaintiffs improperly alleged standing for those certificates based solely on a common registration statement. Defendants note that courts have unanimously held that a common registration statement does not provide standing with respect to a certificate not purchased by a representative plaintiff.

The Court rejects this argument. In *Credit Suisse*, the Court noted that at least one circuit court had held that a named class-action plaintiff need not have purchased the particular certificate in order to have standing. *See id.* at *12 (citing *NECA-IBEW Health*

*& Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 157-64 (2d Cir. 2012)). In *NECA-IBEW*, the Second Circuit allowed for standing based on common originators. *See NECA-IBEW*, 693 F.3d at 164. Plaintiff asserts that, for each certificate here, either a named plaintiff in a class action purchased in the same offering or a named plaintiff could assert standing based on originators common to the security actually purchased by the named plaintiff. Thus, under *NECA-IBEW* and *Credit Suisse*, a plaintiff could reasonably have relied on the filing of these class actions for purposes of *American Pipe* tolling.

Defendants reply that the named plaintiffs in these class actions did not actually rely on common originators for standing, but instead relied on a common registration statement, which the courts agree cannot provide standing. Defendants have not adequately explained, however, why that distinction is material here, as a plaintiff could reasonably rely on any valid basis for standing that might ultimately prevail, whether or not asserted in the class-action complaint. Standing can entail a difficult, fact-intensive analysis, *see Genesee County*, 825 F. Supp. 2d at 1164, and the Court cannot say that a plaintiff cannot have reasonably relied on the filing of these class actions to toll the limitations period for its claims, particular in light of the fact that courts have permitted standing based on common originators. Accordingly, the Court is not persuaded that *American Pipe* tolling should not be permitted with respect to these certificates, and this portion of defendants' motion to dismiss is hereby denied.

### 4. APPLICATION TO STATE CLAIMS

In their original brief in support of their motion to dismiss, defendants argued that *American Pipe* tolling could not apply to plaintiff's state-law claims. In its response, plaintiff failed to address that argument and asserted only that some of its *federal* claims were subject to *American Pipe* tolling. Plaintiff did argue for *American Pipe* tolling for state-law claims in at least one related action, however (*WaMu*, Case No. 13-2012-JWL). Subsequently, in its supplemental response, plaintiff asserted that such tolling should apply as well to the state-law claims in this case.

Defendants argue that plaintiff should not be permitted to change its position in this case in this manner. Regardless of whether plaintiff initially opposed this basis for dismissal in this case, however, it did oppose this basis in another case, and the Court must determine whether the asserted basis for dismissal is valid. Because the parties have had the opportunity to brief this issue, the Court will address it.

This Court has previously held that, under Tenth Circuit law, "where state law supplies the applicable statute of limitations, a court must look to the tolling law of that particular state to determine whether to apply *American Pipe* tolling." *See In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1080 (D. Kan. 2009) (citing *State Farm Mutual Auto. Ins. Co. v. Boellstorff*, 540 F.2d 1223, 1230 n.11 (10th Cir. 2008)). In *Urethane*, the Court then examined whether the particular state's courts would apply *American Pipe* tolling in a "cross-jurisdictional" context, in which the individual claim was brought in state court following a class action filing in another court. *See id.* In that case, the Court declined to import this tolling doctrine into two states' limitations law

14

where it had not been previously recognized by courts in those states. *See id.* at 1081-83.

In this case, plaintiff has asserted claims under California, Kansas, Texas, and Illinois statutes. Defendants argue that none of those states has adopted cross-jurisdictional tolling, and that plaintiff's claims under the law of those states therefore are not subject to *American Pipe* tolling.

Plaintiff does not dispute that neither California nor Illinois has adopted cross-jurisdictional tolling. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) (noting that the California Supreme Court has not adopted cross-jurisdictional tolling); *Portwood v. Ford Motor Co.*, 701 N.E.2d 1102, 1103-05 (Ill. 1998) (refusing to adopt cross-jurisdictional tolling). Accordingly, this Court will apply those states' limitations laws without application of *American Pipe* tolling.

Plaintiff argues that Texas has adopted such tolling. Plaintiff relies on *Grant v. Austin Bridge Construction Co.*, 725 S.W.2d 366 (Tex. Ct. App. 1987), in which the Texas Court of Appeals applied *American Pipe*-style tolling in the context of a previous class action in Texas state court. *See id.* at 370. At least two federal district courts in Texas then relied on *Grant* to allow tolling based on previously-filed federal class actions. *See Prieto v. John Hancock Mut. Life Ins. Co.*, 132 F. Supp. 2d 506, 518 (N.D. Tex. 2001); *In re Norplant Contraceptive Prods. Litig.*, 173 F.R.D. 185, 189 (E.D. Tex. 1997). In *Bell v. Showa Denko K.K.*, 899 S.W.2d 749 (Tex. Ct. App. 1995), however, a panel of the Texas Court of Appeals distinguished *Grant* in refusing to allow *American Pipe* tolling based on a federal class action. *See id.* at 757-58. Finally, in *Newby v.*

15

*Enron Corp.*, 542 F.3d 463 (5th Cir. 2008), the Fifth Circuit, after reviewing this caselaw from Texas, concluded that Texas courts would not likely extend *American Pipe* tolling to cases involving previous federal class actions.

Plaintiff argues that this Court should follow *Prieto* and *Norplant* and conclude that Texas courts would allow cross-jurisdictional tolling. The persuasive value of those cases is diminished, however, by the subsequent holding by the Fifth Circuit, those courts' superior court. Regardless of what Texas state courts may conclude in the future, to this point they have not expressly adopted cross-jurisdictional tolling. In the absence of such adoption, this Court will not import *American Pipe* tolling into that state's limitations law.

Finally, with respect to its Kansas claims, plaintiff relies on the Kansas Supreme Court's decision in *Seaboard Corp. v. Marsh Inc.*, 295 Kan. 384 (2012). *Seaboard* involved application of Kansas's savings statute, K.S.A. 60-518, which allows a plaintiff to commence a new action within six months after the failure of a timely action otherwise than upon the merits. *See id.* The Kansas Supreme Court had previously held that the savings statute applied to a previously-filed class action in which the subsequent individual plaintiff was a putative class member. *See id.* at 395-98 (citing *Waltrip v. Sidwell Corp.*, 234 Kan. 1059, 1060-65 (1984)). In *Seaboard*, the court held that the savings statute and *Waltrip* were not limited to situations involving an initial class action filed in Kansas state court. *See id.* at 406.

Defendants note that the *Seaboard* court stressed that it had not adopted *American*

16

*Pipe* tolling, but instead acted only under the savings statute. *See id.* at 405. The Court agrees that, in light of this pronouncement in *Seaboard*, *American Pipe* tolling should not be applied as a part of Kansas limitations law. In citing *Seaboard*, however, plaintiff states that the Kansas savings statute could be applied to its Kansas claims. In reply, defendants have not addressed this issue of the application of the savings statute to plaintiff's Kansas claims.[3]

The Court need not address this issue at this time, however, because it concludes that none of the state-law claims are ripe for dismissal on this basis at this time. As noted above, defendants rely on this Court's statement in *Urethane* that "where state law supplies the applicable statute of limitations, a court must look to the tolling law of that particular state to determine whether to apply *American Pipe* tolling." *See Urethane*, 663 F. Supp. 2d at 1080. Defendants have apparently overlooked, however, that in the case of the Extender Statute's three-year period, *federal* law, and not state law, has supplied the applicable statute of limitations. Thus, *American Pipe* tolling, a doctrine of federal law, would apply to toll the Extender Statute's three-year limitations period after plaintiff became conservator for the credit unions. Defendants' argument for dismissal of the state-law claims on behalf of U.S. Central and WesCorp appears to be

---

[3]In *Seaboard*, the court also held that the savings statute could apply even where the claims in the two suits were not identical, as long as the claims were substantially similar, based on the same conduct or transaction, and the defendant had received adequate notice of the claim in the first action. *See Seaboard*, 295 Kan. at 418-20. Thus, the fact that no Kansas state-law claims were asserted in the previous class actions on which plaintiff relies would not necessarily preclude application of the savings statute.

17

based solely on expiration of the Extender Statute's three-year period; thus, application of *American Pipe* tolling to the state-law claims would not be precluded.[4]

Defendants also argue that, even if *American Pipe* tolling could apply to some state-law claims, it would not apply here because the particular state-law claims asserted in this case were not asserted in the prior class actions. Defendants have not cited any authority in support of that argument, however. In fact, neither side has addressed whether the Tenth Circuit requires an identity of claims for application of *American Pipe* tolling, or whether claims based on the same facts may suffice. In the absence of argument from the parties, the Court will not address that issue at this time. Accordingly, the Court denies defendants' motion for dismissal of certain state-law claims on this basis.

### 5. FAILURE TO PLEAD TOLLING

Finally, defendants seek the dismissal of plaintiff's state-law claim based on certificate CWALT 2006-OA16, brought on behalf of WesCorp, as time-barred. Perhaps because it did not assert a federal claim based on that certificate, plaintiff failed to include this certificate in the table in its complaint in which it listed the certificates for which *American Pipe* tolling would apply. In the absence of such an assertion of tolling,

---

[4] Although it is difficult to imagine how the Kansas savings statute could apply prior to plaintiff's conservatorships, plaintiff would not be precluded from asserting that statute in opposition to an argument that a Kansas claim became time-barred under Kansas limitations law prior to the application of the Extender Statute. Defendants have not made that specific argument with respect to any particular certificate in this case.

18

defendants argue that the claim based on this certificate is time-barred.

Plaintiff does not dispute that this claim would be barred in the absence of *American Pipe* tolling; plaintiff now asserts, however, that such tolling does apply in the case of that certificate (by virtue of the *Maine State* class action). Defendants argue that plaintiff was required to allege such tolling in the complaint. This Court previously held in *Credit Suisse*, however, that a plaintiff is not necessarily required to plead such facts in anticipation of a limitations defense, *see Credit Suisse*, 2013 WL 1411769, at *4-5, and the Court applies that same ruling here. Thus, plaintiff may assert *American Pipe* tolling with respect to a certificate for the first time at this stage, and defendants' motion to dismiss this claim as time-barred is denied.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion to dismiss (Doc. # 19) as amended is **granted in part and denied in part**, and various claims are hereby dismissed as set forth herein.

IT IS SO ORDERED.

Dated this 3rd day of September, 2013, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
